UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY MASTERSON, et al., Plaintiffs, v. COUNTY OF ALAMEDA, et al., Defendants. | Case No. 19-cv-01625-PJH<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 44, 52 |

Defendants Melynda Logan, Jane Mwangi, and Savitha Quadros's (the "CFMG Nurses") motion to dismiss came on for hearing before this court on July 17, 2019. Dkt. 44. Defendants Gregory J. Ahern, Carol Burton, Bobbie Cook, Kim Curtis, Hayley Holland, Nicholas Lagorio, and Joshua Pape's (the "Alameda Defendants") motion to strike came on for hearing before this court on the same date. Dkt. 52. Plaintiffs appeared through their counsel, Jamie Goldstein. The CFMG Nurses appeared through their counsel, Peter Bertling. The Alameda Defendants appeared through their counsel, Denise Billops-Slone. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows, for the reasons stated at the hearing and for the following reasons.

**BACKGROUND**

This lawsuit is brought by the survivors of Logan Masterson ("Masterson" or the "decedent"), who committed suicide while an inmate at the Santa Rita Jail ("SRJ"). See

Compl., Dkt. 1 ¶ 1.[1]

Plaintiffs Tiffany Masterson (in her personal capacity, and as executor of decedent's estate), and her minor children, Bentley, Bella, Hailey, and Chloe Masterson (through their respective guardians ad litem), bring claims against the County of Alameda (the "County"); Sheriff Gregory J. Ahern; Deputy Nicholas Lagorio; Sergeant Joshua Pape; Carol Burton, Interim Director of the Alameda County Behavioral Health Care Services Agency ("BHCS"); Social Worker Kim Curtis; Therapist Hayley Holland; Therapist Bobbie Cook (Curtis, Holland, and Cook are the "BHCS Providers");[2] the California Forensic Medical Group ("CFMG") and three of its nurses, Savitha Quadros, Jane Mwangi, and Melynda Logan (Quadros, Mwangi, and Logan are the "CFMG Nurses"); and Doe defendants employed by the County of Alameda and CFMG.

Plaintiffs assert eight causes of action: (1) 42 U.S.C. § 1983, Failure to Provide Medical Care in Violation of the Fourteenth Amendment (alleged against all defendants); (2) 42 U.S.C. § 1983, Failure to Protect from Harm in Violation of the Fourteenth Amendment (alleged against all defendants); (3) 42 U.S.C. § 1983, Deprivation of Substantive Due Process in Violation of the First and Fourteenth Amendments (alleged against all defendants); (4) medical malpractice under California law (alleged against the County, Burton, BHCS Providers, CFMG, CFMG Nurses, and Doe defendants); (5) failure to furnish medical care under California law (alleged against all defendants);[3] (6) negligent supervision under California law (alleged against the County, Ahern, CFMG, and Doe defendants); (7) wrongful death under Cal. Code Civ. Proc. § 377.60 (alleged against all defendants); and (8) negligence under California law (alleged against all defendants).

The County of Alameda contracts with CFMG to provide medical and mental

---

[1] For the purposes of these motions, this order recounts facts as alleged in the complaint.
[2] Ahern, Lagorio, Pape, Burton, Curtis, Holland, and Cook are the "Alameda Defendants."
[3] Plaintiffs have agreed to dismiss claim five against the CFMG Nurses. Therefore, claim five as alleged against the CFMG Nurses is DISMISSED.

2

health services for SRJ's inmates. Compl. ¶ 27. "At all relevant times" during his detention, CFMG was responsible for the "health services" provided to Masterson. Id. Quadros, Mwangi, and Logan were registered nurses and CFMG employees during decedent's detention. Id. ¶¶ 28–30.

When a prisoner is newly booked into SRJ, as a general matter the first step of the intake process involves "custody or medical staff completing a brief" health screening by conducting a "cursory interview" with the prisoner. Id. ¶ 69. After the initial screening, newly booked prisoners are typically interviewed by medical staff. Id. "Mental health staff from BHCS play no role in this process." Id.

Defendants had "policies and practices of locking prisoners in isolation, including prisoners with psychiatric disabilities[.]" Id. ¶ 43. As a result, prisoners with psychiatric disabilities lacked "meaningful access" to SRJ programs and services. Id. ¶ 52. Defendants also allegedly failed to provide mentally disabled prisoners with "adequate mental health care." Id. ¶ 64. Mental health care was "provided by or through Defendant Alameda County." Id. ¶ 65. Defendants controlled prisoners' access to psychotropic medication, therapy, and suicide intervention. Id. ¶ 66. They failed to adequately train custody, mental health, and medical care staff on "how to provide appropriate and timely mental health care." Id. ¶ 67. As a result, "custody and health care staff" as a general matter failed to provide appropriate mental health screening (id. ¶ 68), adequately identify, track, and respond to prisoners at risk for suicide (id. ¶¶ 75–77), properly administer psychotropic medications (id. ¶ 67), and house prisoners with serious mental illness in the least restrictive setting (id.).

Masterson was arrested and brought to SRJ on April 4, 2018. Id. ¶¶ 1, 87. He was initially placed in a safety cell on suicide watch. Id. ¶ 88. Suicide watch was discontinued, and on the morning of April 6, 2018, he was rehoused in Administrative Segregation in Housing Unit 02, which contained a bunk bed and "hanging points." Id. ¶ 89. There, he asked for mental health assistance, but no one responded. Id. ¶ 90.

On April 8, 2018, at about 2:45 PM, custody officers observed decedent engage in

1 "strange" behavior—"flooding his cell by clogging the toilet and/or sink" and "partially
2 cover[ing] the window into his cell" with toilet paper. Id. ¶¶ 1, 92. Instead of contacting
3 mental health staff or otherwise intervening, they ordered the water to be turned off in his
4 cell. Id. At 3:20 PM, Logorio performed Masterson's last welfare check before his
5 suicide, which was "cursory and superficial" because Logorio had only an obstructed view
6 inside the cell. Id. ¶ 93. Over an hour passed without a subsequent welfare check, and
7 at 4:29 PM, Masterson was found dead in his cell. Id. ¶¶ 1, 94.

The CFMG Nurses now bring a motion to dismiss claims one, two, and three asserted against them. The Alameda Defendants bring a motion to strike the portions of the complaint claiming punitive damages against them.

## DISCUSSION

**A.    Legal Standard**

**1.    Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court

4

1  to infer more than the mere possibility of misconduct, the complaint has alleged—but it
has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ.
P. 8(a)(2)). Where dismissal is warranted, it is generally without prejudice, unless it is
clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d
1006, 1013 (9th Cir. 2005).

### 2. Federal Rule of Civil Procedure 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

"Our interpretation of the Federal Rules of Civil Procedure begins with the relevant rule's plain meaning. Thus, we begin our analysis by determining whether [plaintiff's] claim for lost profits and consequential damages was: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973–74 (9th Cir. 2010) (internal quotation marks and citation omitted).

### B. Analysis

The court first addresses the CFMG Nurses' motion to dismiss, followed by the Alameda Defendants' motion to strike.

### 1. The CFMG Nurses' Motion to Dismiss

To state a claim against an individual under U.S.C. § 1983, a plaintiff must allege "(1) that the conduct complained of was committed by a person acting under the color of state law; and (2) that this conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pistor v. Garcia, 791 F.3d 1104, 1114 (9th Cir. 2015). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's

5

affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (internal quotation marks omitted).

"Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677. "Iqbal emphasizes that a constitutional tort plaintiff must allege that every government defendant—supervisor or subordinate—acted with the state of mind required by the underlying constitutional provision." OSU Student All. v. Ray, 699 F.3d 1053, 1070 (9th Cir. 2012). Courts in the Ninth Circuit "consistently conclude that undifferentiated pleading against multiple defendants is improper." Dunson v. Cordis Corp., Case No. 16-cv-03076-SI, 2016 WL 3913666, at *3 (N.D. Cal. July 20, 2016) (internal quotation marks omitted); see also Pierce v. Nekamoto, Case No. 18-cv-07279-SI, 2019 WL 1370357, at *1 (N.D. Cal. Mar. 26, 2019) ("It is not sufficient to identify [defendants] as a group, e.g., the medical staff, and instead [plaintiff] must provide the names and acts or omissions of individual persons.").

Here, the complaint's factual allegations primarily pertain to SRJ's typical, institutional policies and practices. See, e.g., Compl. ¶¶ 50, 75, 79. Such general policy and practice allegations fail to identify the individual CFMG Nurses. Moreover, the remainder of the complaint likewise fails to allege any particular actions or omissions undertaken by the individual CFMG Nurses.

Such undifferentiated pleading does not allow the court to reasonably determine which actions belong to which defendant, particularly here where the complaint lists at least twelve separate defendants. The same is true with respect to plaintiffs' allegations against the general categories of "medical staff" and "mental health staff." The court cannot reasonably infer that any individual CFMG Nurse is liable for any misconduct based on the complaint as alleged. As such, plaintiffs' first, second, and third claims as alleged against the CFMG Nurses are DISMISSED WITH LEAVE TO AMEND.

**2. The Alameda Defendants' Motion to Strike**

6

The Alameda Defendants argue that plaintiffs' claims for punitive damages should be stricken because they are precluded from recovering such damages as a matter of law. However, the Ninth Circuit has made clear that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." Whittlestone, 618 F.3d at 974–75. Recognizing this error, the Alameda Defendants now request that the court consider their motion to strike as a motion to dismiss. Because the parties' briefing addressed the relevant issues regarding dismissal under Rule 12(b)(6), the court will consider the motion to strike as a motion to dismiss. See generally Consumer Sols. REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1021 (N.D. Cal. 2009) ("where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion").

The Alameda Defendants make three arguments. First, they argue that California Code of Civil Procedure § 425.13 precludes plaintiffs from seeking punitive damages prior to meeting the statute's procedural requirements. Second, they argue that California Government Code § 818 prevents plaintiffs from seeking punitive damages from certain defendants. Third, they argue that plaintiffs do not allege facts sufficient to state claims against them.

First, California Code of Civil Procedure § 425.13(a) requires that in actions "arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed." Cal. Civ. Proc. Code § 425.13(a). The rule further provides that a court may allow an amended pleading claiming punitive damages where "the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim[.]" Id.

Section 425.13's requirement that plaintiffs seek leave of the court prior to pleading punitive damages is procedural rather than substantive, and as such does not apply to actions in federal court. See Doe 1 v. Xytex Corp., Case No. 16-cv-02935-WHA,

1  2017 WL 1112996, at *8 (N.D. Cal. Mar. 24, 2017); George v. Sonoma Cty. Sheriff's
Dep't, 732 F. Supp. 2d 922, 951 (N.D. Cal. 2010) ("section 425.13 is a procedural rule that does not apply in federal court"); McKay v. Hageseth, Case No. 06-cv-1377-MMC, 2006 WL 8443033, at *8 (N.D. Cal. May 24, 2006) ("Section 425.13(a) is a state law procedural requirement that has no application in federal court"); Burrows v. Redbud Cmty. Hosp. Dist., 188 F.R.D. 356, 361 (N.D. Cal. 1997); Jackson v. E. Bay Hosp., 980 F. Supp. 1341, 1353 (N.D. Cal. 1997) ("Since section 425.13 is a procedural requirement and does not warrant special exception, it is therefore inapplicable, and plaintiff's punitive damages claims will not be stricken due to failure to comply with that section.").

Moreover, Federal Rule of Civil Procedure 8 conflicts with requiring a party to seek leave to state a damages theory. Rule 8(a)(3) prescribes that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Meanwhile, Cal. Civ. Proc. Code § 425.13 prevents a pleading that states a claim for relief from containing a demand for punitive damages without prior court authorization. "[B]ecause Rule 8(a)(3) allows a plaintiff to request in her initial complaint all the relief she seeks, it says implicitly, but with unmistakable clarity that a plaintiff is not required to wait until a later stage of the litigation to include a prayer for punitive damages, nor is she required to proffer evidence or obtain leave of court before doing so." Cohen v. Office Depot, Inc., 184 F.3d 1292, 1298–99 (11th Cir. 1999) (internal quotation marks omitted), vacated in part on other grounds, 204 F.3d 1069 (11th Cir. 2000).

Second, Alameda Defendants argue for the first time on reply that California Government Code § 818 precludes plaintiffs from seeking punitive damages against certain defendants as a matter of law. Because the argument was raised for the first time on reply, the court declines to consider it. See, e.g., Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("we decline to consider new issues raised for the first time in a reply brief"); Dytch v. Yoon, Case No. 10-cv-02915-

8

MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) ("Defendant's argument . . . was raised for the first time in her reply brief. As a result, it is improper for the Court to consider it.").

Third, the Alameda Defendants argue that plaintiffs' complaint ascribes conduct to unspecified "defendants," which is insufficient to support a request for punitive damages against each particular Alameda Defendant under Rule 8(a). As with plaintiffs' claims against the CFMG Nurses, plaintiffs plead facts supporting their request for punitive damages only generally attributed to "defendants" rather than any of the individual Alameda Defendants. For the same reasons described above with respect to the CFMG Nurses, plaintiffs' allegations supporting punitive damages against the Alameda Defendants are insufficiently-specific with respect to the acts or omissions undertaken by each of the individual Alameda Defendants, and all requests for punitive damages asserted against them are accordingly DISMISSED WITH LEAVE TO AMEND.

### 3. Leave to Amend

Because the complaint may be saved by amendment, plaintiffs are granted leave to amend their complaint. See Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 954 (9th Cir. 2019).

When amending their complaint, the court directs plaintiffs' attention to the recent Ninth Circuit opinion in Gordon v. Cty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018). In Gordon, the Ninth Circuit established an objective standard for medical care and failure-to-protect claims "brought by pretrial detainees against individual defendants under the Fourteenth Amendment." Id. That opinion explained:

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's

9

> injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case. The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard.

Id. at 1125 (internal quotation marks and citations omitted).

## CONCLUSION

For the foregoing reasons, plaintiffs' first, second, and third claims as alleged against the CFMG Nurses are DISMISSED WITH LEAVE TO AMEND. All of plaintiffs' requests for punitive damages against the Alameda Defendants are DISMISSED WITH LEAVE TO AMEND. Plaintiffs may file an amended complaint on or before August 16, 2019, and any response shall be filed within 28 days of the filing of plaintiffs' amended complaint. No new parties or claims may be added without leave of court.

**IT IS SO ORDERED.**

Dated: July 22, 2019

PHYLLIS J. HAMILTON
United States District Judge